We are back on record and ready for the final case on the oral argument calendar, Boquist v. Baumgart. I should say cases 23-35535 and 23-3696. Good morning, Your Honors. May it please the Court, Justin Buehler representing defendant appellants in this matter. I plan to reserve five minutes for rebuttal and I'll certainly watch the clock. This case presents an issue of great importance within our federal system. Whether federal courts may adjudicate First Amendment claims arising out of a state legislature's internal efforts to investigate and regulate the conduct and behavior and speech of one of its members. In this case, the plaintiff, a member of the Oregon Senate, seeks to hold three of his Senate colleagues personally liable for their participation in a unanimous bipartisan committee vote, a vote that imposed personal safety measures, interim safety measures in the form of a 12-hour notice rule in order to facilitate further investigation into plaintiff's conduct and statements he made in the state capitol. Now certainly, certainly legislators in our system have a right to speak freely. But that right has always been subject to the legislature's exclusive constitutional authority to regulate and discipline member conduct and speech. Was this discipline? This was on the road to potential discipline. Well, but I thought there was testimony that this wasn't discipline, that this was a safety measure. If this was discipline, then don't we get closer to the Bond case in terms of constitutional rights? If he was disciplined for his speech, then it seems to me it's a very different case than if they just instituted a safety measure. So I'm interested in your view about whether it was discipline. So this was an interim safety measure at the start of an investigation to facilitate further investigation. To your question, Judge Hurwitz, certainly this did not get to discipline later. Sometimes it does and sometimes it doesn't when the legislature embarks on this road. But I don't think the question is whether it resulted in discipline. I'm trying to figure out what is the nature of the action taken, right? So without using 20-20 hindsight, at the outset, there's this, you know, we know what the facts are. And so I really joined Judge Hurwitz in trying to get my arms around was that disciplinary or were they concerned about, you know, employees' concerns for their safety and acting for out of that motivation? Yeah. So it was the latter. That's my reading of it, Your Honor, is that... Not discipline. Well, so this particular action, no, was not a disciplinary action. So it... The 12-hour rule. Correct. Okay. Correct. So if so, you argue for complete legislative immunity. But isn't this more akin to an administrative action then? The action that's being challenged, not where the process might end up, had they expelled him at the end of the process, we'd be dealing with a legislative action. But isn't this more of an administrative action? No, Your Honor. No, it's not, because if you view it in an isolated way in that manner, instead of contextually as part of the legislature embarking on something that is within its power to potentially punish behavior, then you fall into the trap of looking at it in a way that's not appreciated in that context. So an analogous instance... Well, what if their final action had been this rule? In other words, they went through the whole process and said, okay, we're done. It's a 12-hour rule. Is that discipline? You're saying if they stop after imposing the prophylactic measure, as it were? Yeah, this is enough. We don't need to go further. Yeah. So I think we're maybe tangling up two things that need to be kept separate here. So if you're asking me, is this interim safety measure disciplinary, like, is it a discipline? The answer is no. That is not the nature of it. But what I'm saying, which I think is very important and that other sister circuits have recognized as very important, such as in the Rangel v. Boehner case and in one of the Sixth Amendment cases, the member discipline is entitled to absolute legislative immunity. That is what the other circuits unanimously... That's how they viewed this. So I think both things are true here. So then going back to what I asked you to tease apart a minute ago about the nature of this 12-hour rule, and you said it was a safety measure, you're now telling me I can't divorce that from the step one in a disciplinary procedure? Yeah. So I think the point... Is that a yes? I'm sorry? Was that a yes? Well, I'm sorry. Ask the question again. My apologies. That's all right. I asked you a minute ago about trying to tease out the nature of that without 20-20 hindsight, the nature of the 12-hour rule, and I think you said it was a safety measure. Now I think you're telling me that I should also view it as step one in a disciplinary procedure. Is that what you're telling me? Correct. So it was both? It was both. Correct.  And here's why. So when in a workplace or, you know, the Capitol building, when the legislature is investigating the conduct or speech of one of its own members, when it starts to go down that road, I mean, we don't know, you're right, with 20-20 hindsight, we don't know exactly initially where that's going to go, but when the conduct committee for the Senate puts safety measures in place for purposes of facilitating further investigation, look, that could lead nowhere, as it did here or in the Hernandez case cited in the answering brief, also from Oregon. That could lead somewhere. And there's no way to know initially which road we're on. The important thing, though, is that you need absolute immunity for committee votes as you embark down that path. Counsel, let me follow up on that point, because your argument really suggests that there are no factual issues remaining, as I understand the position that you took in your brief. You're asking for reversal and a remand for dismissal. Why is it a dismissal, rather than for the case to proceed to trial? Are you suggesting there are facts that are? Look, there are many cases where there are sufficient factual disputes. The nature of the speech, for example, the nature of the conduct related to what you and Judge Quistion was discussing, where we really can't figure it out because there are countervailing characterizations. The case proceeds to trial, and then after that, you would have an opportunity to move for absolute qualified immunity. So why isn't it that kind of a case, where there are sufficient disputes on what happened, whether this was protected speech or not? I'm really kind of following up on a point that the previous panel said, that as the case proceeds through discovery, there may be additional evidence that would shed light on the nature of the statements, whether it's really motivated by a legitimate safety concern or whether it's more retaliatory. Are there jury questions in there that need to be considered?  And the Supreme Court has been very clear that this is an immunity from trial, also from suit, and needs to be, you know, figured out at the earliest point possible. And certainly, look, if there are further facts that this Court would need, then it may have to remand for determination on those facts. If there are further facts about this action by a legislative committee, like I'm saying with this action, you mean the 12-hour rule? Correct. Well, and let's be more precise. The committee, I believe what the First Amendment claims are rooted in, the specific action, is the committee vote, the roll call vote, the unanimous bipartisan committee vote to adopt the 12-hour rule. I believe that is the action, right? And so, look, that looks pretty legislative to me, but if this Court needs further facts as to what that is? Well, the district court, for example, to just follow up on Judge Wynn's question, I think he thought this was a political stunt. I think that is in the record somewhere. I think that was the sum up. But if we put ourselves in the shoes of the folks who are running the capital and in charge of making sure that there's an orderly and safe workplace, then it seems to me that Judge Wynn has a point about, is there an issue of fact about whether there were legitimate safety concerns even raised? But that goes to the First Amendment claims. That does not go to the immunity analysis. Tenney v. Brandhove? Tenney v. Brandhove? It does if we're trying to figure out, if we're trying to, forgive me for interrupting, but that's why I keep trying to parse out what's the nature of that action. Was it disciplinary? At first you said yes, and now you said well. It was also, first you said it was a safety measure, and then you said no, it's also a disciplinary measure. It is the first step in a disciplinary action. The action itself, that first step, is not the end point of discipline, right? That's the point I'm making now. Right. Let me try. Let me try again because I'm not sure that I fully understand your position on why there aren't sufficient disputed factual questions that will warrant a trial, and then the determination after trial as to whether qualified immunity applies versus a straight reversal and dismissal. So the district court characterized this as court political speech. It's political hyperbole, and so therefore the action is really retaliatory. In trying to figure out whether this is an interim measure that's legitimately motivated by safety concerns, or whether, as you characterize it as a legislative action, or whether it's one step on the road to core legislative action, or whether it's retaliatory, are there factual questions in there that the jury needs to sort out first? And your answer is no, and tell me why not. Even if there's conflicting reactions, right? Some people thought, okay, well, maybe there's a safety issue here. Other people are like, well, that's really political hyperbole. So do we resolve those questions in your favor at this point, or those jury questions? No. So the Supreme Court has been crystal clear on this point that we do not consider motives. We do not consider whether they're vindictive or political. So, Judge Winn, you're citing evidence in the record, and certainly that evidence is there. There's a disputed question as to the merits of the First Amendment claim, but that dispute is not relevant for the immunity analysis. Can I refocus you a little bit on this? Let's assume for a moment that we don't think absolute immunity obtains. Let's assume, I don't think anybody disputes that under 1983, given that they're suing state officials, we have to do a qualified immunity analysis, at least with respect to monetary claims. Yes. So would you address the qualified immunity issue and tell me why you think you prevail under qualified immunity, which I think we always do at summary judgment. We look at, we do the analysis. The court tells us we can assume a constitutional right was violated, but now the question is, is there some sort of clearly established law? Would you address that for us? Certainly, Judge Hurwitz. So, and I will preface it by saying, look, this might be the easier road for this court. On the nominal damages claim, there was not clearly established law at the time that applied to these particular facts. And let me tease that out, if you'll bear with me. So the law was unsettled because at the time, we didn't have the benefit of this court's opinion in Boquist 1, right? We didn't have that. So we didn't know that the Pickering standard, the more forgiving standard for employee speech didn't apply. We didn't know whether this particular kind of sui generis 12-hour notice rule was a material adverse action. I think it's pretty clear reading the district court's qualified immunity analysis that there was not a clearly established right. And indeed, what I'd actually point out as the most persuasive evidence that not every reasonable official would have concluded that this was a violation is that the district court itself initially thought that this did not state a claim for relief. So certainly, reasonable minds could disagree at the time of the action in this case as to whether this was a violation or not. If you're right on that, would you turn to the non-damages claims and tell us how we deal with those? Yeah, certainly. You contend that they're moot. That's correct. And look, to be clear, just to state this clearly, qualified immunity does not apply to the declaratory judgment part of the judgment below. And so I think if this Court were to go the qualified immunity route, mootness is the other angle, right? And here, the reason why this case is moot at this point, there's several reasons, really. Number one, the active investigation on this conduct ceased at the end of 2019. It has been almost five years since anybody has done anything on this. Also, Rule 27 in the legislature, the legislative branch personnel Rule 27 makes crystal clear that there's a five-year limitation on any action on specific occurrences of conduct. That passed in June of this year. So on the declaratory judgment piece of this — Oh, no, he is. But he's serving until January. So he's constitutionally barred from serving beyond his current term. Oh, but his current term hasn't expired yet. That's correct, Your Honor. That's correct. Is it inconceivable that he'll — I don't want to use this term in a negative way, but it's the shortest way to do it — mouth off again in this way, that that might lead to further discipline? Well, but that would be an entirely different incident, right? If we're looking at the declaratory relief afforded by the district judge, the district court — It depends whether or not the incident is capable of repetition. And, you know, you didn't undo the rule until after this case was brought. So those things sort of — you know, those things sort of cut against finding it moot. Well, if we just play that out and somebody, any member on the floor made another statement that was perceived by others, just hypothetically, to be threatening, right, wouldn't another process have to start all over again, another four-person committee like the one that bipartisan that met here and to decide whether to institute something like the 12-hour rule or something else, or —  And somebody could come to court and attack that if it started that. That's correct. And the specific relief, declaratory relief, was rooted in these specific statements and the specific reaction by the committee almost five years ago violating plaintiff's rights. That 12-hour rule was a compromise made up in committee, right? Correct. We don't have any reason to think that another committee of a similar circumstance were to arise would think a 12-hour warning notice rule would be the correct thing. That is entirely right. And if I can — No, that really is a question. Is that — there was no precedent for doing that. That's correct. And if I can add to that, Judge Christin, this was something made up on the fly by a minority party member, one of plaintiff's minority party caucus colleagues. So, look, I don't know how that factors out to the merits analysis, and I don't think the court needs to get there, frankly. But, look, from the ambit of qualified immunity and whether this could happen again, it was so in the moment particularized to that conduct and that situation, it really is hard for me to imagine it could. And let me just make an additional point, and I see I'm eating into my rebuttal time, and I apologize for that, but I guess I'm apologizing to myself. But, look, I think everybody has moved on in the Capitol. They've moved on. Everybody hasn't moved — everybody hasn't moved on because the plaintiff is still pursuing his case. Correct. And we're along for the ride, too, I suppose. I don't think this is your strongest argument, because we would take very seriously a situation where an elected member of a body were silenced if we — if we thought there — and that's all hypothetical, but I'm just saying that premise is something we would take very, very seriously, as you know. That makes sense. So you just said something that confused me a little bit, because we were talking about mootness, right? So we had the nominal damage claim and then the equitable relief claim. And when we talked about equitable relief, we're talking about mootness and — right? We went through whether there was any reason to think that this was capable of repetition, yet evading review. And I think you hearkened back to qualified immunity. Oh, yeah. My apologies. Yeah. We've got to keep those. Yeah. Let's keep them separate. And the point is a point about mootness, and the point is just that at this point, given the statute of limitations running, given that this was specific to this conduct and this rule that kind of generated on the fly, I just can't, frankly, envision the circumstances that this would happen again. So my takeaway is that on the damages claim, you think the qualified immunity —  — is why your team wins, and on the equitable relief, you think the claim's moot. Correct. Look, our team would love to win on legislative immunity, but that is an alternative way to reverse in both the summary judgment and also the fee award. Where would that leave you on fees? So I think as long as you're doing a merits-based reversal on the nominal damage part of the — of the judgment below, that would be sufficient to then switch over the prevailing party status. Do you have any authority for that, because there would be an adjudication in his favor — in Mr. Boquist's favor on the equitable claim, and then really just a declaration that the — that the matter is moot. Do you have any authority for the notion that that wouldn't leave him as prevailing party? Well, so not offhand, but here's how I get there logically. So if the declaratory part of the judgment is moot, if that's what the court concludes, I believe the proper disposition is vacatur, right? You vacate the judgment below as it pertains to the equitable relief. But because mootness does not apply to the nominal damages award, I think if — if there's qualified immunity or any immunity, that is a — that's a reversal. That's not just vacatur. That's a reversal. And as a result, I think that that's essentially saying — sorry, the district court erred by — by determining the violation of rights. And I think that is sufficient enough under 1988 to reverse. Thank you. Do you have any other questions? No. Okay. When you — I just — one quick one. Go ahead. When did the mootness occur? When did the mootness occur? In your view. Well — It certainly wasn't moot when brought, so tell me — Correct. Was it after — before the district court's ruling that's now on appeal to us? So I — I believe the mootness occurred when the statute of limitations ran in June. That's after. That's nearly a year after the district court — In of 2024. Correct. Because that's — So we can't say that the district court erred in not finding it moot. It wasn't moot then. I suppose that's right. There's a lot — I'm trying to untangle it in my mind on the fly. Yeah. So should we send it back to the district court to determine whether it's now moot, or should we make a finding of moot? I mean, I think — I think my — my reading of Brock v. Newsom and this court's case law on mootness is you can look at the situation before you and make that determination now. Thank you, counsel. Yeah. Thank you. Appreciate it. When you come back, you can plan. We'll — we'll put two minutes on the clock. Okay. Thank you. You bet. Good morning. My name is Vance Day. I represent the plaintiff, Senator Boquist. He and his wife are here, and Beth Jones on this case as well. May I first start with the mootness, kind of the rear end of the cow rather than the front? Whatever you want to start is fine. Okay. Appreciate that. The plaintiff, Senator Boquist, is here, and Beth Jones on this case as well.    This case is not moot. There is still — and the interesting thing about this, there is a five-year statute of limitations in House Concurrent Resolution 28. But the interesting thing about that is, is that there's also a facial review period that has no dates on it. So if you look at — real-world chance that your client could be, let's call it disciplined for want of a better term, could be disciplined again for the conduct that he engaged in in 2019? Yes. There really is? Yeah, there really is. If you live in Salem and you see the fractious nature, think about Measure 113. We were just here a few months ago.  After this rule was put in place, my understanding is it just sort of petered out. Nobody even followed up and filed a complaint. Well, that's — that was part of the discipline punishment element, which I'll get to in a minute. But Senator Prasansky, the defendant, is still the chair of this committee, unless that happened just recently. But he was the one who crafted the Rule 27 under which he thought he had authority. The rule is no longer there, right? Well, Rule 27 has changed four times. Yes. And so House — So the rule that you — the rule that was in effect at the time that your client — I'll use disciplined without prejudice in this — was disciplined is gone.  It's been assumed. The discipline that was imposed has been removed. And the statute of limitations has run on the — on the — and you're not alleging that he intends to do it again. So I'm trying to figure out — I would allege, if I may — I'm trying to figure out why we're really here. I would allege that Senator Boquist has a keen interest in his First Amendment rights, and he makes use of that all the time. Oh, sure. But you're not alleging that he intends to make the statement that led to whatever happened in 2019 again. Probably not make that statement, although I wouldn't put it past him for him to put it on a T-shirt. The point is, is that he does speak out a lot. And he is — Right. And we — and we protect the First Amendment, no question. But could you — could you assume that violation and go on to the qualified immunity analysis? What's the clearly established law? Yes. The — under the qualified immunity, the interesting thing is, is that, you know, defendants argue that it's not, you know, particularly established under the law, that it's not clearly established. But even the district court, looking at what was the qualified immunity, didn't even look at Boquist I, meaning the original case that came out. Well, of course not. You don't want a judge to say, you know, I got it wrong the first time, so therefore it couldn't have been — Although he did say that in the transcript. Yeah, but it was — but that's a — to me, that's an argument with some substance. Good judge. You think he's a great judge the second time through.  But if you look — He didn't think there was clearly established law. If he didn't think it, why should — why should the defendants have thought it? I can't remember the exact term Judge Hurwitz — that he used. He said something about it goes without question, that this type of retaliation is not permitted. And I'm — that's my transliteration. Let me ask you this, counsel. On the qualified immunity question, sometimes the facts really have to be resolved until we can figure out what the clearly established law really is, right? I'm not sure that this is that type of a case. And so I just don't see a case that is close enough. We don't require it to be exactly on all fours. But the Supreme Court has cautioned us not to define the clearly established law at too high a level of generality. So can you talk about the factual disputes in this case and whether it matters for purposes of figuring out the clearly established law question? I would. Two things. One, it's interesting, and the defendants can't argue against this, really, and that is that the committee at the time, on July 8th, 2019, did not have authority to act at all. They were ultra vires. They literally took into the committee without a basis to make their determination. They didn't have any authority to put in interim safety measures, number one. They didn't have authority to even constitute that committee. If you notice, in the record it says the Senate Special Committee. That's under the first HCR, which ended on June 29th. And the significance of those facts are what? That if the jury finds that they're acting ultra vires, then it's closer to retaliatory finding? It provides a wide swath, a firm foundation for retaliation. Why? Because Senator Persansky helped draft HCR 20, the one that was in place on July 8th. That's the interesting thing about this case. But even if you're right, why does that entitle you to summary judgment? If there's a, as Judge Wynn suggests, there are facts in the record that would suggest retaliation, but there's also facts in the record that would suggest that the people on the committee viewed it as a safety measure. You don't get summary judgment under those circumstances, do you? I think we get summary judgment because Judge McShane wrote an awesome opinion. I thought he wrote an awesome one the first time when we reversed him. But it's based on the facts, though. Well, my question is whether he resolved the facts in your favor instead of the other way or saying that there's sufficient disputed facts such that the jury must resolve it. He made a finding of retaliation. So he construed the facts in your favor, didn't he? I think he took it more looking at the actual specific statements of defendants, how the police were never asked to come and support the interim safety measure, how they never sent instructions to the Secretary of the Senate, how Senator Persansky sent an email out to everybody saying basically right the day after, good job, we sent a message inside the Capitol and outside the Capitol, which was the discipline. You don't do this in the Oregon Senate. Another message is that we're going to insist upon a safe workplace. So obviously we weren't there and we're not finders of fact anyway, but if you can just close the loop on Judge Wynn's question. Sure. We have to take the defendant's actual statement during the July 8th committee hearing. Senator Persansky says, I do not believe he poses a current threat. The other thing that's happening in that committee meeting, and we've read this record, right, is that there were people complaining, employees apparently complaining, that they felt threatened. We heard that from the investigator. There was never any complaint filed. There was no investigation prior. Right, but that gets back to my question about whether the disputed facts, the extent that the facts conflict, whether it really matters for purposes of clearly established law. On a record where there were expressions by some people, not by everybody, expressions by some people of safety concerns, what is the clearly established law that you're relying on? So the clearly established law, I would point to two different things. Blair, I'd also point to Watts with regard to how this statement was made and how it was dealt with. It was a future event. So Senator Boquist, in saying to the three months before he made the statement, said to the superintendent of police, hey, send bachelors. Tell them to come heavily armed because I'm not going to be a political prisoner in my state. It's just that simple. That's a future event. Well, but, again, I'm trying. And we're sensitive to this because, interestingly enough, when we find that police officers are not entitled to qualified immunity, the Supreme Court often says to us, oh, no, you're generalizing. We need a case with facts pretty close to these facts before we'll deprive a public official of qualified immunity. So let's assume there was a constitutional violation, which is mostly what you've been arguing so far. But we still have to find a case that would say to the legislators, with facts close enough to this one, that this was a constitutional violation. And I'm just not sure I see any case that you cite that's close. I mean, Bond, the person, was expelled from the legislature. So what's what? And you just answered Judge Wynn's question by saying you don't think it matters whether there was a legitimate safety concern or not. And you were mentioning, but we interrupted you. I'm not sure which one of us, maybe me. So I apologize. But you were saying this was a futuristic sort of threat or statement. Why does that matter for purposes of this qualified immunity announcement? Because Watt stands for the proposition that you can say something that people could take as a threat. But if it was a conditioned precedent, meaning it was into the future that LBJ would be standing in front of him and he'd have a rifle, the chance of that happening is so minute, you can't retaliate against that person speaking because it's freedom of speech. But this is a different scenario. It is, Your Honor. Going back to Judge Wynn's, you know, initial question. Well, and Judge Hurwitz is trying to follow up on it. We really need a case that's pretty darn on point. And what's the best you've got? I think Blair and his progeny, as it moves forward, helps. This case is maybe at too high of a level of generality, as the Supreme Court would say. I just don't see a case where there are actual expressions of safety concerns by staffers and other people. But if we pull it out from the safety concerns a little bit, and I realize that the defense wants to focus on that because that was what was the ideology. And it's a disputed fact. So at this point, we'd have to assume that there were legitimate safety concerns, unless you can tell me what I'm missing. Well, in the record, it's clear that the committee members said there were no legitimate safety concerns. I said that a minute ago, and I responded the way I respond now, the way I respond to them, which is that what's going on there is there's a concern about – I think there's definitely a concern about making sure there's a safety –  Yes, definitely. From people. Well, let me – and I don't remember the – That's the problem. It was people. There's employees working there, and they're concerned about – what are we missing there? Why isn't that a dispute that would need to be resolved to go the route you're wanting us to go? I understand your question, I think. Okay. Let me answer it this way. Uh-huh. The target, if you want to use the term target, of – Senator Boquist spoke to Senator Courtney, number one. Number two, the second statement was toward the state police. Well, now you're telling me that the people who expressed concern were irrational, and they shouldn't have been frightened. Well, I wouldn't necessarily say that, but they weren't in the zone, and I can't remember the – They weren't targets. He didn't target any of them. I mean, by his words, I certainly would grant you that, but I'm still looking for the case on point. I wish I could – I'm having a moment of cerebral flatulence, so forgive me. I can't remember the case. But it's the case cross-burning, where the people across the street said we were terrified, but the court said, no, you actually weren't within the zone or you weren't targeted. See, but you're now talking about – and this is why we're having some difficulty. I'm assuming for a moment that your client's constitutional rights were violated, for purposes of this question. The record shows, yeah. It may or may not be the right conclusion. That's prong one. I'm assuming that. So you don't have to explain to me again why their conclusion was irrational and they shouldn't have done it. I'm still trying to find the case. I think qualified immunity, by the way, is a very difficult way to analyze cases, but the Supreme Court tells us we have to. Watts is a case in which somebody was prosecuted and somebody said, it's not a true threat and therefore you can't prosecute them. But I'm trying to find a case that says that a legislative body or something like it can't take what it thinks is a safety measure in response to what may be protected speech. Yes. And I don't think there's any case that we could find that had those direct facts. Or some analogous to it, something analogous to it. Yes. I do think – well, and how far do we go in the analysis? Yeah, I mean, so I know that's part of the problem. But give me your – let's assume that I don't think Watts particularly helps you and Bond and Floyd is a complete disqualification of somebody from the legislature. What other case should I be looking at? You're torturing me, Judge Watts. I'm torturing myself because I'm trying to find a case. You've been tortured by the qualified immunity analysis. I realize that. And I'm not sure I can give you any more specific than that. Okay. And I wish I could. And that may be the – you know, it may be the problem with qualified immunity, but it's what they ask us to look for. What about equitable relief? You think this is not moot? I don't think it's moot. And your best argument for that is? HCR 28, which is the current version, says five-year statute of limitations. So somebody, all they have to do is file a complaint on the 18th of June, this year. And that complaint can sit there under facial review under Section 14C, I believe it is, of that rule for an indeterminate standpoint. It's like – Even one that's barred by limitations? It's not barred because it was filed before the five years. It's like a – So the five years expires on what day? June 19th. So if I filed a complaint on – Yeah, but June 19th of next year? This year. Well, it's August. I know. Was the complaint filed? We wouldn't know that because the rule doesn't tell you – or doesn't – Nothing in the record that says the complaint was filed, and you're saying you wouldn't know because what? Because, one, the rule does not require notice to the respondent that it was filed. Okay. Then there's a facial review period where the LEO, the legislative equity officer, reviews whether it has enough grounds to be filed. And if he or she decides that, then they send it to an investigator. At that point – But what – but I'm still not clear. Why wouldn't the statute of limitation – if it wasn't filed – There's no complaint that was filed by June 19th. Filed, then the five years has not expired. I'm not sure you're asking what you're saying. It says not moot because there might have been a complaint filed and we'll never know. And we wouldn't know at this point.  Number two, this is a case of intense public interest. It makes a difference in the legislature, and it's one of those cases that can evade judicial review because it gets mooted and sent out. That's why I think they decided after three and a half years of punishing him publicly, because it was a public shaming. You can't do this and say this in this legislature because, look what happened to Boquist. It'll happen to you. And the public were upset about it. So this is one of those cases that does need to set underneath that it's not moot for the equitable remedies. Did I answer that question, Your Honor? Yes, you did. Okay. May I – oh, good. You have some time. Go ahead. I thought I saw red, so I was concerned about that. Not on our equipment. Maybe you have your own, but no. If I may, going back to the capacity to act without the authority to act, again, we have four different HCRs. The Boquist statement was made under the original HCR 11, which was January 14th, 2019 it was passed. They made it on June 19th. On June 25th, that special investigator sent out her report. Nobody asked her to make that report. I won't go through all these facts, but listen to this. Then on the 29th, HCR 20 was passed, which expanded, and then it became a big human relations rule to take all the employees, the legislators, even the public. It swept into its orbit. This is more of an HR function than it is a legislative function. Yeah, but now it seems to me, and I didn't understand this was the argument in your brief, now you're treading much closer to legislative immunity, because what you're saying is that the establishment of the committee violated the legislature's own rules, and it's sort of like sausage. We never – we don't want to know how the sausage was made. We just – they're entitled to make the sausage, and we decide at the end whether it's constitutional or not. Aren't these all questions of sort of Oregon state law that aren't posed by your complaint? No, it's a question of is the law the law. Are we lex rex or rex lex? Are we – is the legislature under the law or are they over the law? Here's what I mean. But certainly Oregon could entitle the legislature to operate this way. What you're saying is it's not the way they entitled the legislature to operate. I'm having a hard time seeing that raising a constitutional claim. Okay. So if the legislature committee acted ultra virus with no authority. As a matter of state law, ultra virus. As a matter of state law. That makes it a 1983 violation? It does because the remedy or what he was punished for was protected by – they used state law to punish him. But you didn't raise any state law claims. I'm correct, right? Correct. No. So you could have gone to the district judge with a supplemental state law claim that said and by the way what they did violated state law, rule in my favor. But you didn't. You only put a 1983 claim. So as you may have heard earlier today, I'm having some trouble wrapping Oregon state law into the Constitution. Love my state. And as a former circuit court judge, I think we made the right choice. That's all I'll say. But here's the problem. When they held July 8th's hearing, the rules that they used didn't – and Judge McShane pulled the string on this. You'll see it. They didn't have authority until November 25th, 2019, five months later. They had literally no authority to act on July 8th. And that's part of that foundation of retaliation because Senator Persansky helped write that bill. I can't – I can assume, I think it's fair, that when we took him into deposition, he didn't – he said, I think I had authority, maybe I didn't or something like that. My point is, is that they didn't have any authority to act. And that initial or that foundational element runs through the whole time that they dealt with Senator Boquist. For qualified immunity, we often find ourselves saying that a police officer can be wrong, he just can't be unreasonable. So in your premise is that they never had authority from the outset. What if they were wrong about that? What's wrong? Well, they can be wrong, and then you add the other factual elements to it of how they dealt with their safety measure, not giving instructions to anybody, never enforcing it, never bringing in the police, the state police to be there on the days that he was. And from that, you think the conclusion we ought to draw at summary judgment is that there was no legitimate safety concern? Yes, because the committee did not rely on any complaints. They had no evidence in front of them. In fact, they said, this is just one step in a process. Unfortunately, they had no authority to initiate the process. That's the point. Thank you for your advocacy. Let me just make sure no further questions. Thank you very much, sir. Thank you, Judge Christin. I think this court well understands the issues here, understands why qualified immunity is a challenging argument here, and the contours of mootness, and also has our briefing on legislative immunity. I'm also hearing the court understands the disputed issues in the record. So I don't have anything to add unless this court has questions. I do not. Do you have further questions, Judge Hurwitz? I don't. Thank you very much. We would urge the court to reverse both the summary judgment and the fee award, and remand with instructions to dismiss. Thank you. Thank you. Thank you both for your very careful advocacy and excellent briefing. We're going to take this under advisement, and we'll stand in recess.
judges: CHRISTEN, NGUYEN, HURWITZ